STATE EX REL. BARCLAY MOTORS, INC., RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,588.)

(Submitted June 6, 1936. Decided June 23, 1936.)

[59 Pac. (2d) 45.]

*Mr. R. F. Gaines,* for Relator, submitted a brief and argued the cause orally.

*Mr. Frank K. Sullivan,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an application for a writ of mandamus. The petition therefor is based upon the affidavits of R. F. Gaines and J. Edgar Barclay, on behalf of Barclay Motors, Inc., a corporation, the relator herein.

It appears that one Joe S. Jacobson commenced an action in a justice's court in Silver Bow county against the relator,

wherein he sought to recover the sum of $216 and costs of suit, as a penalty claimed from relator for an alleged violation of the provisions of Chapter 159, Laws of 1933. That action resulted in a judgment by the justice's court in favor of Jacobson and against relator for the sum of $166 and costs. Relator appealed from the judgment to the district court of Silver Bow county, respondent herein. Thereafter the action was called for trial, and each side announced its readiness. A jury was impaneled; a statement of the case was made on behalf of plaintiff, who submitted evidence in support of the allegations of his complaint. At the conclusion of plaintiff's evidence, relator (defendant therein) submitted and argued to the court a motion for nonsuit, which was by the court denied. Relator thereupon made its statement of the case and submitted its evidence. Thereafter counsel for both parties rested, and the court announced: "Evidence closed on both sides." Thereupon relator submitted to the court a motion for a directed verdict. This motion was argued by counsel for both sides, outside the presence of the jury. At the conclusion of the argument the court directed that the jury be returned to the courtroom. The court stated at that time: "The motion will be granted." Immediately following that statement by the court, counsel for plaintiff Jacobson said: "That bars us from anything but an appeal. If you would give us a nonsuit, we would have a chance to file again, without going to the supreme court. That is the only thing. We can't take an appeal from this decision, but we would like to try it again." The court then replied: "I will withdraw the ruling, and you may move to dismiss or take a voluntary nonsuit." To this the relator objected. Then, following some argument upon the matter, the following proceedings occurred: Counsel for plaintiff Jacobson said: "At this time I ask leave of the court to withdraw the action. Is that indicated by the record? And take a voluntary nonsuit." To this counsel for relator (defendant) objected "upon the grounds and for the reasons that the matter comes too late." The court overruled the objection and stated: "Upon the record made, the action is

ordered dismissed, at the costs of the plaintiff.'' This, so far as the record before us discloses, concluded the proceedings in the matter. Thereafter relator applied to this court for a writ of mandate directing respondent court to annul the order of dismissal, reinstating ''the ruling of said court through its judge sustaining relator's motion for a directed verdict in said action,'' and commanding the court to enter judgment in favor of relator in conformity with its previous ruling upon the motion for directed verdict, or, ''otherwise, to rule upon said motion of relator for a directed verdict in said cause.'' An alternative writ was issued out of this court, in response to which respondents appeared and interposed a motion to quash.

It will be observed that relator requests that the court be required to reinstate the case, and also to grant the motion for a directed verdict and to enter judgment in relator's favor. Whether all the relief thus requested might appropriately be granted in a case where the court had erroneously granted a motion for dismissal after it had finally and formally granted the motion for a directed verdict, we need not here decide. As we view the matter, the court never actually ruled upon the motion. The statements of the court which relator assumes to interpret as such a ruling cannot, under the circumstances, be said to constitute anything more than an expression of opinion or an intention by the court. In such circumstances mandamus will not, in any event, lie to compel the court to grant the motion for a directed verdict and to enter judgment for relator, because mandamus lies only to compel action and not to control discretion. (*State ex rel. Stuewe* v. *Hindson*, 44 Mont. 429, 120 Pac. 485; *State ex rel. Scollard* v. *Board of Examiners*, 52 Mont. 91, 156 Pac. 124.) It is manifest, therefore, that the only relief available to relator, conceding that the court erred in granting the motion to dismiss, is a writ of mandate commanding the court to annul the order of dismissal, to reinstate the action, and to determine the motion for a directed verdict.

This brings us to the principal question presented herein, viz.: Did the court have the right to grant the motion to dismiss after relator's motion for a directed verdict had been made, argued, and submitted to it?

Section 9317, Revised Codes 1921, provides in part that "an action may be dismissed or a judgment of nonsuit entered in the following cases: 1. By the plaintiff himself, at any time before trial, upon payment of costs. * * * 4. By the court, when, upon the trial and before the submission of the case, the plaintiff abandons it." Respondents contend that the dismissal granted in this case was proper, under the provisions of subdivision 4 of the above-quoted section. Relator, however, takes the position that the submission of the motion for a directed verdict constituted a "submission of the case" within the meaning of the section relied upon, and that a motion for dismissal subsequent thereto came too late to justify consideration. Thus it becomes important to ascertain when a case is submitted within the meaning of subdivision 4 of section 9317, supra.

Although we are cited to no case wherein this court has passed upon the identical question, a substantially analogous situation was presented in the case of *State ex rel. Montana Central Ry. Co.* v. *District Court,* 32 Mont. 37, 79 Pac. 546, 548. In that case it appeared that after the defendant had submitted to the court a motion for judgment on the pleadings, the plaintiff was permitted by the court to dismiss without prejudice. Upon application to this court defendant was granted a writ of mandamus requiring the district court to reinstate the case and decide the motion for judgment on the pleadings. In granting the writ, this court held that "the application made to dismiss after the submission of the motion for judgment on the pleadings came too late," and that "the attempt of the court to dismiss the case·upon such application or praecipe was futile, and the order of dismissal a nullity." That case, however, turned upon the question of whether there had been a trial of the case within the meaning of subdivision 1 of section 9317, supra, prior to the motion for dismissal.

Subdivision 4 of the section upon which respondents herein rely was apparently not mentioned or considered in that case. Indeed, we have found no case wherein that particular subdivision has been construed by this court, other than by way of mere mention in passing.

Section 581, California Code of Civil Procedure, is practically identical with section 9317, supra. The California courts have on several occasions adverted to and considered subdivision 4 of that section. In none of them, however, was the situation exactly like that presented in the instant case, i. e., where a motion for dismissal was granted after a motion for a directed verdict had been submitted. The case of *Rutherford* v. *Peppa,* 53 Cal. App. 309, 199 Pac. 1111, involved a somewhat similar matter. In that case it was held that: "After the plaintiff's evidence is in and the defendant has submitted the case [by a motion for a nonsuit], and the court has stated what his ruling will be on the evidence, it·is too late for the plaintiff to dismiss his action; and notwithstanding an attempted dismissal by the plaintiff at that time, the trial court has the power to render a judgment in favor of the defendant."

The specific question with which we are here confronted is fully discussed in an annotation upon the subject in 79 A. L. R. 688 et seq., under the heading, "What amounts to 'final submission' within statute permitting plaintiff to take voluntary dismissal or nonsuit without prejudice before final submission." The discussion therein begins with the statement that "it seems practically impossible, from a consideration of all of the cases on this subject, to formulate any controlling general rule or principle which the decisions, or even a majority of them, may be said to support." Again, and more particularly with reference to those cases wherein a motion for directed verdict has been made and submitted to the court (as in the instant case), it is said: "The cases cited at this point in the annotation are in conflict, and while some of them in which opposite conclusions were reached are distinguishable on the facts, and much effort has been made by the

courts to make distinctions, there remains considerable conflict." (79 A. L. R. 693; see, also, 18 C. J. 1156.) Following these general statements many cases are cited as sustaining the proposition that the submission of a motion for a directed verdict does not constitute a final submission of the case which will foreclose the right to dismiss. Many cases are also cited wherein a contrary view was adopted. Thus in the case of *Spies* v. *Union Pacific Ry. Co.*, 250 Fed. 434, 162 C. C. A. 504, the court recognized the doctrine that it is too late for the plaintiff to dismiss after a motion for a directed verdict has been made or submitted, or after such a motion has been made and argued and the court has expressed its opinion upon it.

In referring to the last-mentioned group of decisions, the author makes the following statement (79 A. L. R. 698) : "The courts in some cases have fixed the point of time at which there is a 'final submission' within the meaning of the statutes, at an earlier stage of the proceedings than in the cases above set out. The reason has doubtless been, in part at least, one of public policy, to prevent suitors from obtaining practically an adverse decision and then voluntarily dismissing or obtaining a nonsuit and trying the case again in another court. These cases may, perhaps, be said, therefore, to take a more liberal view of the phrase 'final submission' than those decisions which sustain the right of dismissal up to the point that the case is taken under advisement by the court on the law and facts, or is in the actual possession of the jury for decision, without the necessity for any further action on the part of the court."

Although, as we have already indicated, the case of *State ex rel. Montana Central Ry. Co.* v. *District Court,* supra, is not exactly in point here, still it may well be said to manifest a tendency on the part of this court to adopt the "more liberal view" to which reference is made in the foregoing quotation. Whether it does or not, we are convinced that the cases which hold that a motion for dismissal comes too late when made after a motion for a directed verdict has been made and submitted are correct and based upon sound reasoning. (See 79 A. L. R. 698 et seq., and cases cited.)

As was said in the case of *Turner* v. *Pope Motor Car Co.*, 79 Ohio St. 153, 86 N. E. 651, 657, "to recognize in our practice the claim that is made by plaintiff in error would give a plaintiff the right, when he fails to make a case, and it is so decided, to thwart the contest on his own evidence, dismiss without prejudice, and again bring the defendant into some court to answer a similar demand, with all the attendant costs; and, if it can be done once, it may be done a second or third time, thus prolonging the expensive and annoying litigation. This system of practice should not be encouraged." (See, also, to the same effect, *Rutherford* v. *Peppa*, supra.)

Respondents suggest that relator has a remedy by an appeal and for that reason mandamus is not the proper remedy. Under the authority of *State ex rel. Montana Central Ry. Co.* v. *District Court*, supra, mandamus is unquestionably the proper and appropriate remedy in this kind of case. (See, also, *Clarke* v. *Hundley*, 65 Cal. 96, 3 Pac. 131.)

We conclude that relator is entitled to a writ of mandamus commanding the respondent court to annul the order of dismissal, to reinstate the cause, and to determine relator's motion for a directed verdict. Let the writ be so issued.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the foregoing decision.